UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BETTY O. MUKA,

                                          Plaintiff,

     -v.-                                              5:08-CV-0439
                                                                    (NPM/GHL)

JAMES P. MURPHY and JAMES A.
MEGGESTO,

                                          Defendants.

---

APPEARANCES:

FOR THE PLAINTIFF:

Betty O. Muka, *pro se*
113 Kay Street
Ithaca, NY 14850

FOR THE DEFENDANT,
 James P. Murphy:

Office of the New York State Attorney    Bruce J. Boivin
 General
The Capitol
Albany, NY 12224

FOR THE DEFENDANT,
 James A. Meggesto:

Meggesto, Crossett & Valerino, LLP    Heather R. La Dieu
313 E. Willow Street
Suite 201
Syracuse, NY 12303

Neal P. McCurn, Senior District Judge

## *Memorandum, Decision and Order*

### *I. Introduction*

Presently before the court are separate motions to dismiss filed by each defendant pursuant to Rule 12 of the Federal Rules of Civil Procedure. Plaintiff, appearing *pro se*, opposes. Both motions are decided on the papers submitted without oral argument.

### *II. Procedural Background*

Plaintiff, Betty O. Muka ("Muka") initially commenced this action, in which she purports to set forth various federal civil rights claims, solely against defendant, James P. Murphy ("Murphy"). At the time of the filing of the original complaint, Muka contemporaneously filed a motion for a temporary restraining order ("TRO") against Murphy, as well as for an order sealing the complaint. This court summarily denied both motions.

Thereafter, Murphy filed a motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state claims upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Muka filed her papers in opposition to Murphy's motion to dismiss, and subsequently amended her complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a) in order to add James A. Meggesto ("Meggesto") as a defendant ("the Amended Complaint"). By letter motion, Murphy requested that the court consider his original motion papers as a motion to dismiss the Amended Complaint with the exception of his argument that plaintiff failed to acquire personal jurisdiction, citing his admission that Muka properly served him with the

2

Amended Complaint.

Eventually, Meggesto also filed a motion to dismiss the Amended Complaint, citing Rules 12(b)(1), (2) and (6) as grounds in his Notice of Motion. Plaintiff having timely filed her papers in opposition to Meggesto's motion to dismiss, and Meggesto having declined to file a reply memorandum, said motion is considered fully briefed.

## *III.  Factual Background*

Muka's claims arise from her dealings with defendants Murphy and Meggesto ("Defendants") in state court proceedings, which were commenced against Muka by Ruth P. Matson ("Matson"). Ostensibly, at one time Matson executed a "Durable Power of Attorney" form appointing Muka her "attorney-in-fact." Am. Compl. ¶ 15 ("power of attorney appointment"). In November 2007, Matson commenced an action against Muka in state court ("the state court action") seeking an order compelling Muka to "convey over any and all property belonging to [Matson]," including but not limited to Matson's real property, personal property and bank accounts. Ex. 3 to Am. Compl. Defendant Murphy is the presiding judge in the state court action, and Defendant Meggesto is an attorney who represents the plaintiff in that action. See id.

Shortly after Matson commenced the state court action, she filed a motion seeking interim relief, and Muka filed a cross motion seeking, among other things, dismissal of the complaint. After an initial hearing regarding Matson's motion, Murphy ruled from the bench enjoining Muka from transferring, diminishing, or encumbering any of Matson's assets and, among other things, directing Muka to transfer funds to Meggesto, the sum of which represents the amount due for fees

3

and services related to Matson's residential placement.  Murphy thereafter gave written notice to Muka that her papers in response to Matson's motion were to be deemed an answer and that Murphy was *sua sponte* treating Muka's motion to dismiss as a motion for summary judgment.  See Ex. 1 to Am. Compl.  Shortly thereafter, Muka sent her written objections to Murphy, but ostensibly at some point filed a cross motion seeking, among other things, an order of recusal and an order vacating Murphy's prior decision.  See Ex. 3 to Am. Compl.  In addition, Muka filed an answer, which included defenses, counterclaims and third-party complaints.

By court order dated January 10, 2008, Murphy dismissed Muka's third-party complaint, affirmative defenses and counterclaims.  Murphy also denied Muka's motion for an order seeking his recusal and to vacate his earlier decision enjoining Muka from transferring, diminishing or encumbering Matson's assets and directing her to transfer funds to Meggesto, as well as his decision to treat Muka's papers in response to Matson's motion as an answer and to treat Muka's motion to dismiss as a motion for summary judgment.  In addition, Murphy invalidated the power of attorney appointment, and consequently directed Muka to return all of Matson's assets to Meggesto within twenty days of service of the order.  An order setting forth Murphy's decision was issued January 17, 2008.

On April 22, 2008, Muka filed her complaint against Murphy in this court, and two days later filed her motion for a TRO, seeking this court's intervention to, among other things, enjoin Murphy from incarcerating Muka for contempt, ostensibly because she failed to comply with his January 17, 2008 order.  This court denied Muka's motion, and thereafter, as previously discussed, Muka

4

amended her complaint to add Meggesto as a defendant.

By her Amended Complaint, Muka claims that Murphy took a number of actions which violate her civil rights. First, Muka claims that Murphy violated her right to contract pursuant to 42 U.S.C. § 1981 when he invalidated the power of attorney appointment. See ¶¶ 22-23. Muka also contends that Murphy acted outside of his jurisdictional authority when he *sua sponte* converted her motion to dismiss into a motion for summary judgment, deemed her motion to be an answer, and dismissed her third party complaint, counter claims and affirmative defenses, thus depriving her of her right to contract under 42 U.S.C. § 1981 as well as her right to equal protection under the Fourteenth Amendment to the United States Constitution, of which relief is sought ostensibly pursuant to 42 U.S.C. § 1983. See ¶¶ 26-31.

Muka further claims Murphy conspired with Meggesto to violate her civil rights under 42 U.S.C. § 1985 by, among other things, impeding the process of her Article 78 action against Murphy as well as her appeal of Murphy's decision in the state court action, intending to injure Muka and her property, and depriving her and all *pro se* litigants of their right to equal protection of the laws. See Am. Compl. ¶¶ 44-50. Likewise, Muka contends that Murphy negligently failed to prevent the conspiracy to violate her civil rights under 42 U.S.C. § 1986. See Am. Compl. ¶¶ 51-54. Specifically, Muka alleges that "Murphy, although a private citizen, ... [failed to] influence himself in his capacity as Supreme Court Judge presiding over [the state court action]" to prevent the conspiracy between Murphy and Meggesto to violate her civil rights to contract and to equal protection of the laws. Am. Compl. ¶ 52.

Finally, Muka alleges that the New York State Judiciary, which includes all New York State judges and licensed attorneys, among others, have a custom of violating the civil rights of *pro se* litigants, a group of which Muka considers herself a member.

Muka seeks relief in the form of an injunction against Defendants as well as all members of the New York State Judiciary. In addition, Muka seeks compensatory and punitive damages exceeding twenty million dollars.

## IV.  Discussion

### A.  Standard of Review

For purposes of deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court will, as it must, accept the allegations of fact in the Amended Complaint as true, drawing all reasonable inferences in Plaintiff's favor. See World Religious Relief, Inc. v. Sirius Satellite Radio, Inc., No. 05-CV-8257, 2007 WL 2261549, at *1 (S.D.N.Y. Aug. 7, 2007) (quoting Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994)). Additionally, when deciding such a motion, the court may only consider "the factual allegations in the complaint, [...] documents attached to the complaint as exhibits or incorporated by reference, [...] matters of which judicial notice might be taken, and [...] documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Muller-Paisner v. TIAA, 446 F.Supp.2d 221, 226-227 (S.D.N.Y.2006) (citing Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993) (internal citations omitted)).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible

6

on its face." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[1] The Court of Appeals for the Second Circuit has recently interpreted the foregoing language to require that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible [,]" but does not require a heightened pleading standard for civil rights claims. Iqbal v. Hasty, 490.3d 143, 157-58 (2d Cir.2007) (emphasis in original).

The court notes that it is mindful of the well-established principle that a *pro se* litigant's papers are to be construed liberally. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). Accordingly, a *pro se* action should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir.1997). The Second Circuit has further instructed that, when reviewing *pro se* submissions, a district court should look at them "with a lenient eye, allowing borderline cases to proceed." Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) (per curiam) (internal quotation marks omitted).

### B.  Defendant Murphy's Motion to Dismiss

Murphy seeks dismissal of the Amended Complaint for failure to state

---

[1] By its opinion in Bell Atlantic, the Supreme Court recently abrogated the often-cited language of Conley v. Gibson "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." --- U.S. ----, ----, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007) (quoting Conley, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In doing so, the Court found that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Id., at 1969.

7

claims against him on the basis of absolute judicial immunity.  According to Murphy, "a fair reading of the [amended] complaint and its exhibits demonstrates that all of the claims asserted by plaintiff arise from plaintiff's dealings with [] Murphy in his capacity as the presiding judge in [the state court action]."  Mem. of Law in Supp. of Mot. to Dismiss, at 4, Dkt. No. 10.

Muka disputes this assertion, arguing that (1) no one but she has the legal authority to change the capacity in which she is suing a defendant, and (2) Murphy acted outside of his jurisdictional authority, and therefore was not acting in his capacity as a judge, when he violated her civil rights.  See Mem. of Law in Opp'n to Mot. to Dismiss, Dkt. No. 13.

As the court acknowledged when denying Muka's motion for a TRO in this case, "[j]udges enjoy absolute immunity from personal liability for 'acts committed within their judicial jurisdiction.'"  Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994) (quoting Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213 (1967)).  The Court of Appeals for the Second Circuit has noted that the Supreme Court developed a two-part test for determining whether absolute judicial immunity applies.  See Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997) (citing Stump v. Sparkman, 435 U.S. 349, 360, 98 S.Ct. 1099, 1106 (1978)).

> First, a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.  Second, a judge is immune only for actions performed in his judicial capacity.

Tucker, 118 F.3d at 933 (citing Stump, 435 U.S. at 356-57, 360-63, 98 S.Ct. at 1105-08) (internal citations and quotations omitted).  As is particularly applicable to this case, the Supreme Court noted in Stump that it previously clarified the

8

distinction between "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter." 435 U.S. at 356 n.6, 98 S.Ct. at 1104 (quoting Bradley v. Fisher, 80 U.S. 335, 351-352 (1871)). In Bradley, the Court stated:

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

Id. Here, there is no question that Supreme Courts of the State of New York are courts of general jurisdiction, and are "competent to entertain all causes of action [] unless ... jurisdiction has been specifically proscribed." Wells Fargo Bank Minn., Nat'l Ass'n v. Mastropaolo, 837 N.Y.S.2d 247, 251, 42 A.D.3d 239, 244 (N.Y. App. Div. 2007) (quoting Thrasher v. United States Liab. Ins. Co., 225 N.E.2d 503, 506, 19 N.Y.2d 159, 166, 278 N.Y.S.2d 793 (N.Y. 1967)). Here, Muka argues that Murphy acted in excess of his jurisdictional authority when he *sua sponte* converted her motion to dismiss into a motion for summary judgment, deemed her motion to be an answer, and dismissed her third party complaint, counter claims and affirmative defenses. However, these actions relate to "the manner and extent in which [Murphy's] jurisdiction shall be exercised" and do not demonstrate a "clear absence of all jurisdiction over the subject matter." Bradley, 80 U.S. at 351-352. Therefore, Murphy was acting within his judicial capacity, and is immune from liability for those acts. Further, while it is not within this

9

court's jurisdiction to decide the validity of those acts, Plaintiff is not without recourse as she has the ability to seek relief from a court of appellate jurisdiction. Consequently, Murphy's motion to dismiss the Amended Complaint against him is granted.

### C. *Defendant Meggesto's Motion to Dismiss*

Meggesto has also filed a motion to dismiss the Amended Complaint against him, purportedly pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6). See Notice of Motion, Dkt. No. 24. However, nowhere in his papers does Meggesto explain the basis for his purported argument that the court lacks personal or subject matter jurisdiction. In fact, by his memorandum of law in support of his motion, Meggesto tersely argues only that the claims set forth in the Amended Complaint are frivolous, defendant Murphy is immune from suit, and Muka is under a civil disability from commencing any *pro se* litigation in the State of New York. The latter two arguments are of course irrelevant to the issue presently before this court, to wit, whether claims against Meggesto, which are brought in a federal district court, should be dismissed. While Meggesto does not explicitly argue that the ground for his motion to dismiss for failure to state a claim upon which relief may be granted is that Muka's claims are frivolous, "a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee" and is not seeking *in forma pauperis* status under 28 U.S.C. § 1915. Pourzandvakil v. Humphry, No. 94-CV-1594, 1995 WL 316935, at \*8 (N.D.N.Y. May 23, 1995). See also Tornheim v. Eason, 348 F.Supp.2d 209, 215-216 (S.D.N.Y. 2004) (citing Pourzandvakil). The court will proceed with its analysis accordingly.

Here, the court notes that the sole claim against Meggesto set forth in the Amended Complaint is a claim for conspiracy pursuant to 42 U.S.C. § 1985. In order to withstand a motion to dismiss on a claim under § 1985, a plaintiff must allege the following elements:

> (1) a conspiracy; (2) motivated by racial or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons of the equal protection of the laws or of equal privileges and immunities under the law; (4) an overt act in furtherance of the conspiracy and (5) injury.

Vertical Broadcasting, Inc. v. Town of Southampton, 84 F.Supp.2d 379, 389 (E.D.N.Y. 2000) (citations omitted). By the Amended Complaint, Muka alleges that Meggesto conspired with Murphy to violate her civil rights, see ¶ 44 and that the conduct was discriminatory on the basis of Muka's race, which is Cherokee Indian, and on the basis of her status as a *pro se* litigant, see ¶ 5. As for the final three elements of her section 1985 cause of action, Muka recites a litany of claimed civil rights deprivations, which Murphy and Meggesto purportedly conspired to achieve, including impeding her appeal of Murphy's decision in the state court action as well as her Article 78 proceeding against him, violating her right to contract with Matson via the power of attorney appointment, depriving her of equal protection of the laws by ignoring uncontested evidence that Matson was mentally competent when she entered into the power of attorney appointment, allowing Meggesto to commit larceny of Matson's possessions, and violating Muka's right "to acquire and hold property and to the quiet enjoyment of [her] real estate and possessions[.]" Am. Compl. ¶¶ 45-49.

Upon a liberal reading of the Amended Complaint, it is clear Muka fails to set forth the requisite factual allegations to establish any civil rights violation

against her.  The underlying action of defendant Murphy, which forms the basis for all of Muka's claims, to wit, the invalidation of the power of attorney appointment, was required by state law, a fact which has been made abundantly clear to Muka on numerous occasions.  See N.Y. GEN. OBLIG. LAW § 5-1501(2) (McKinney 2007).  Accordingly, there being no basis for Muka's conspiracy claim, Meggesto's motion to dismiss the Amended Complaint against him is granted.

### ***D.  Claims Against the New York State Judiciary***

Finally, to the extent Muka intends to join the entire New York State Judiciary as defendants to this action, the court dismisses any claims asserted against said defendants as, like Murphy, they are similarly immune for actions taken within their judicial capacity.

Muka alleges the New York State Judiciary, including "Mur[ph]y and Atty. Meggesto, habitually and routinely cause violations of civil rights and injuries for which ... 42 U.S.C. § 1983 authorizes an action at law ... ."  Id. ¶ 56.  Muka claims the New York State Judiciary relies upon "cases in which *pro se* litigants have been purportedly enjoined from bringing lawsuits" without any authority under federal or state law.  Id. ¶¶ 58-59.  According to Muka, such injunctions violate the Fourteenth Amendment equal protection and due process rights of *pro se* litigants.

Muka complains specifically of Murphy's reliance on Muka v. Hancock, Estabrook, Ryan, Shove & Hust, 120 Misc.2d 146 (N.Y. Sup. Ct. 1983) in support of his dismissal of her third party complaints due to her legal incapacity to make affirmative claims.  See Ex. 3 to Am. Compl.  In that case the state court found

12

that Muka "has and continues to abuse the *pro se* privilege, and, therefore, is enjoined from bringing any further *pro se* proceedings without a further order of this court." Muka, 120 Misc.2d at 147.  The New York State Appellate Division for the Third Department has recognized this decision as enjoining Muka "from bringing any *pro se* action in [the State of New York] without prior judicial approval."  Alameda Holding Co., Inc. v. Holmberg, 24 A.D.3d 899, 899, 804 N.Y.S.2d 702 (N.Y. App. Div. 2005).

Further, this court takes judicial notice that several other courts have taken similar action against Muka.  For example, the Superior Court of Rhode Island has found that

> [t]here is no question, after fully reviewing plaintiff's pleadings and affidavits, that her claims against these defendants are baseless, totally without merit, frivolous, harassing and malicious in the extreme.  To conserve the resources of the Superior Court, and to protect the instant defendants from further defending against this type of conduct, and to protect all litigants in the Court system, a preliminary injunction is hereby issued restraining and enjoining the plaintiff from all further prosecution of this case pro se without a further Order of this Court.

Muka v. Peerless Ins. Co., No. C.A. 84-4189, 1986 WL 714336, at *8 (R.I. Super. Jan. 21, 1986) (also noting that Muka was disbarred from Rhode Island Bar by the Supreme Court of the State of Rhode Island in 1985, see Carter v. Muka, 502 A.2d 327 (R.I. 1985)).  Another Supreme Court for the State of New York concluded that

> Muka is enjoined, restrained and prohibited from hereafter commencing any civil action against the New York State Bar Association, its officers or employees, in any court of New York State or any political subdivision thereof unless she be represented in said

13

> action by an attorney duly licensed to practice law in New York State and who is actively engaged in the practice of law in New York State and unless she or her attorney obtains an index number for the action and affixes the index number to the summons prior to service.  A defendant against whom an action is commenced by Betty O. Muka in violation of this injunction, may apply for sanctions including, but not limited to, an ex parte order to dismiss the action.

Muka v. New York State Bar Ass'n, 120 Misc.2d 897, 905-906, 466 N.Y.S.2d 891, 896 (N.Y. Sup. Ct. 1983).  Clearly legal authority exists to enjoin *pro se* litigants from commencing lawsuits without prior permission of the court in some circumstances.  Moreover, the New York State Judiciary is immune from suit for any such action by its members, as such action must necessarily be taken within their judicial capacity.  Accordingly, to the extent Muka purports to assert any claim against the New York State Judiciary, said claims are dismissed.

Finally, the court is constrained to warn Muka that she is dangerously close to being subject to a similar injunction in the United States District Court for the Northern District of New York.  By this court's conservative estimate, Muka has commenced no less that forty-six actions in the past twenty-five years, including the present action, in state and federal courts throughout the United States.  While the court is not in a position to comment on the merits of all of those cases, certainly the bases for the present action are questionable at best, and frivolous at worst.  Muka is advised to refrain from asserting such baseless claims in the future.

## *V.  Conclusion*

It is ORDERED that the motions to dismiss the Amended Complaint filed by defendant James P. Murphy, see Dkt. No. 10, and by defendant James A.

Meggesto, see Dkt. No. 24, are GRANTED; and it is further

ORDERED that any and all claims against the New York State Judiciary are DISMISSED; and it is further

ORDERED that accordingly, the entire action is hereby DISMISSED; and it is further

ORDERED that the Clerk of the Court is directed to serve a copy of this Memorandum, Decision and Order to plaintiff, Betty O. Muka, by regular mail.

IT IS SO ORDERED.

DATED:    September 3, 2008
          Syracuse, New York

_____
Neal P. McCurn
Senior U.S. District Judge